OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

June 24, 2002

The Honorable Richard J. Miller
Bell County Attorney
Post Office Box 1127
Belton, Texas 76513

Opinion No. JC-0518

Re: Whether subsections (c) and (d)(4) of Local Government Code section 242.001 authorize a county and a municipality to agree to a "hybrid" mix of regulations related to plats and subdivisions of land (RQ-0492-JC)

Dear Mr. Miller:

Subsection (c) together with subsection (d)(4) of section 242.001 of the Local Government Code authorizes a municipality and a county to enter an "interlocal agreement" that "establishes a consolidated and consistent set of regulations related to plats and subdivisions of land" to be enforced in the municipality's extraterritorial jurisdiction. TEX. LOC. GOV'T CODE ANN. § 242.001(c), (d)(4) (Vernon Supp. 2002); Act of May 24, 2001, 77th Leg., R.S., ch. 1028, § 1, 2001 Tex. Gen. Laws 2276, 2277-78. You ask whether section 242.001(d)(4) of the Local Government Code authorizes a municipality and a county "to agree to a hybrid mix of the respective authority granted each entity by the Local Government Code."[1] Because the term "consolidated" in section 242.001(d)(4) appears to contemplate such a "hybrid" arrangement, we conclude that a municipality and a county may agree to a "hybrid mix" of their regulatory authorities. The Interlocal Cooperation Act, chapter 791 of the Government Code, does not apply.[2] See TEX. GOV'T CODE ANN. ch. 791 (Vernon 1994 & Supp. 2002).

Before reaching this issue, we conclude that section 242.001(c) of the Local Government Code, as adopted by Act of May 24, 2001, 77th Leg., R.S., ch. 1028, § 1, 2001 Tex. Gen. Laws 2276, 2277 (House Bill 1445), may be harmonized with section 242.001(c), as adopted by Act of May 17, 2001, 77th Leg., R.S., ch. 736, § 2, 2001 Tex. Gen. Laws 1459, 1461 (Senate Bill 873). As harmonized, section 242.001(c), as adopted by Senate Bill 873, applies when the municipality and county have not entered an agreement. On the other hand, section 242.001(c), as adopted by House Bill 1445, applies when the two entities have chosen to enter an agreement. See TEX. GOV'T

---

[1] Letter from Honorable Richard J. Miller, Bell County Attorney, to Honorable John Cornyn, Texas Attorney General, at 1 (Jan. 9, 2002) (on file with Opinion Committee) [hereinafter Request Letter].

[2] *Contra* Letter from Arthur J. Anderson, Winstead Sechrest & Minick, to Opinion Committee, Office of Attorney General (Mar. 22, 2002) (on file with Opinion Committee) [hereinafter Builders' Brief].

CODE ANN. § 311.025(b) (Vernon 1998) (directing harmonization of two amendments to same statute if possible).

At issue in this request is the unincorporated area around a municipality that is located within a certain distance of the municipality's corporate boundaries, which is known as the municipality's "extraterritorial jurisdiction." *See* TEX. LOC. GOV'T CODE ANN. § 42.021 (Vernon 1999). The perimeter of a particular municipality's extraterritorial jurisdiction is determined by the municipality's size:

> The extraterritorial jurisdiction of a municipality is the unincorporated area that is contiguous to the corporate boundaries of the municipality and that is located:
>
> > (1) within one-half mile of those boundaries, in the case of a municipality with fewer than 5,000 inhabitants;
> >
> > (2) within one mile of those boundaries, in the case of a municipality with 5,000 to 24,999 inhabitants;
> >
> > (3) within two miles of those boundaries, in the case of a municipality with 25,000 to 49,999 inhabitants;
> >
> > (4) within 3½ miles of those boundaries, in the case of a municipality with 50,000 to 99,999 inhabitants; or
> >
> > (5) within five miles of those boundaries, in the case of a municipality with 100,000 or more inhabitants.

*Id.*

A municipality and the county sharing the territory within the municipality's extraterritorial jurisdiction have concurrent jurisdiction over plats and subdivisions of land within the municipality's extraterritorial jurisdiction. *See La Cour Du Roi, Inc. v. Montgomery County*, 698 S.W.2d 178, 186 (Tex. App.–Beaumont 1985, writ ref'd n.r.e.). A municipality generally may extend to its extraterritorial jurisdiction "rules governing plats and subdivisions of land," as well as other ordinances relating to public-road access. TEX. LOC. GOV'T CODE ANN. §§ 212.002, .003 (Vernon 1999 & Supp. 2002). A landowner in the extraterritorial jurisdiction who wishes to divide the tract into two or more parts also must, in certain circumstances, obtain the county commissioners court's approval of the plat. *See id.* §§ 232.001, .002 (Vernon Supp. 2002); *see also Elgin Bank v. Travis County*, 906 S.W.2d 120, 122 (Tex. App.–Austin 1995, writ denied) (per curiam) (stating that county may refuse to approve plat that does not satisfy Local Government Code chapter 232).

With the possible exception of a county that adopts rules under the newly adopted chapter 232, subchapter E of the Local Government Code, municipal and county authority in the extraterritorial jurisdiction is not identical. *See* TEX. LOC. GOV'T CODE ANN. §§ 232.100-.107 (Vernon Supp. 2002); Act of May 17, 2001, 77th Leg., R.S., ch. 736, § 1, 2001 Tex. Gen. Laws 1459, 1459-61; *see also Elgin Bank*, 906 S.W.2d at 123 (contrasting county's power to regulate subdivisions with municipal powers). For example, a municipality may not require a plat for land that will be divided into lots larger than five acres, where each lot "has access and no public improvement is being dedicated." TEX. LOC. GOV'T CODE ANN. § 212.004(a) (Vernon 1999). By contrast, a county may require a plat for lots less than ten acres, but may not require a plat of a landowner who will divide the tract into lots that are larger than ten acres if the owner does not lay out streets, alleys, parks, or other areas intended to be dedicated to public use or for access. *See id.* § 232.0015(f) (Vernon Supp. 2002); *see also id.* § 232.001(a)(3). Chapter 232, subchapter E, adopted in the most recent legislative session, grants to three types of counties authority to "adopt rules governing plats and subdivisions of land" that appears to be as broad as that granted to a municipality: a county (A) with a population of 150,000 or more that adjoins an international border; (B) with a population of 700,000 or more; or (C) that adjoins and is within the same metropolitan statistical area as a county with a population of 700,000 or more. *Id.* §§ 232.100(2), .101(a). Like a municipality, which "may adopt rules governing plats and subdivisions of land . . . to promote" the municipality's "health, safety, morals, or general welfare" and the municipality's "safe, orderly, and healthful development," a county operating under chapter 232, subchapter E may "adopt rules governing plats and subdivisions of land within" the county's unincorporated area to promote the county's "health, safety, morals, or general welfare . . . and the safe, orderly, and healthful development of the" county's unincorporated area. *Compare id.* § 212.002 (Vernon 1999) (municipal authority) *with id.* § 232.101(a) (Vernon Supp. 2002) (county authority under subchapter E). We need not determine here whether a county operating under chapter 232, subchapter E has exactly the same authority to regulate in an extraterritorial jurisdiction as a municipality does.

Chapter 242 of the Local Government Code attempts to reconcile a county's and a municipality's overlapping jurisdiction over extraterritorial jurisdiction. Section 242.001, the section about which you ask, generally provides for regulating subdivisions in a municipality's extraterritorial jurisdiction:

> *Text of subsec. (a) as amended by [Act of May 17, 2001, 77th Leg., R.S., ch. 736, § 2, 2001 Tex. Gen. Laws 1459, 1461 (Senate Bill 873)]*
>
> (a) This section applies only to a county operating under Sections 232.001-232.005 or Subchapter B, C, or E, Chapter 232.
>
> *Text of subsec. (a) as amended by [Act of May 24, 2001, 77th Leg., R.S., ch. 1028, § 1, 2001 Tex. Gen. Laws 2276, 2276-77 (House Bill 1445)]*

(a) This section applies only to a county operating under Sections 232.001-232.005 or Subchapter B or C, Chapter 232. Subsections (b)-(e) do not apply:

      (1) within a county that contains extraterritorial jurisdiction of a municipality with a population of 1.9 million or more; or

      (2) within a county within 50 miles of an international border, or to which Subchapter C, Chapter 232, applies.

(b) For an area within a municipality's extraterritorial jurisdiction, as defined by Section 212.001, a plat may not be filed with the county clerk without the approval of the governmental entity authorized under Subsection (c) or (d) to regulate subdivisions in the area.

*Text of subsec. (c) as amended by [Senate Bill 873]*

(c) In the extraterritorial jurisdiction of a municipality, the municipality may regulate subdivisions under Subchapter A of Chapter 212 and other statutes applicable to municipalities, and the county may regulate subdivisions under Sections 232.001-232.005, Subchapter B, C, or E, Chapter 232, and other statutes applicable to counties. If a municipal regulation conflicts with a county regulation, the more stringent provisions prevail.

*Text of subsec. (c) as amended by [House Bill 1445]*

(c) Except as provided by Subsections (d)(3) and (4), a municipality and a county may not both regulate subdivisions in the extraterritorial jurisdiction of a municipality after an agreement under Subsection (d) is executed. The municipality and the county shall enter into a written agreement that identifies the governmental entity authorized to regulate subdivision plats and approve related permits in the extraterritorial jurisdiction. For a municipality in existence on September 1, 2001, the municipality and county shall enter into a written agreement under this subsection on or before April 1, 2002. For a municipality incorporated after September 1, 2001, the municipality and county shall enter into a written agreement under this subsection not later than the 120th day after the date the municipality incorporates. . . .

(d)  An agreement under Subsection (c) may grant the authority to regulate subdivision plats and approve related permits in the extraterritorial jurisdiction of a municipality as follows:

(1) the municipality may be granted exclusive jurisdiction to regulate subdivision plats and approve related permits in the extraterritorial jurisdiction and may regulate subdivisions under Subchapter A of Chapter 212 and other statutes applicable to municipalities;

(2) the county may be granted exclusive jurisdiction to regulate subdivision plats and approve related permits in the extraterritorial jurisdiction and may regulate subdivisions under Sections 232.001-232.005, Subchapter B or C, Chapter 232, and other statutes applicable to counties;

(3) the municipality and the county may apportion the area within the extraterritorial jurisdiction of the municipality with the municipality regulating subdivision plats and approving related permits in the area assigned to the municipality and the county regulating subdivision plats and approving related permits in the area assigned to the county; or

(4) the municipality and the county may enter into an interlocal agreement that:

(A) establishes one office that is authorized to:

(i)  accept plat applications for tracts of land located in the extraterritorial jurisdiction;

(ii) collect municipal and county plat application fees in a lump-sum amount; and

(iii) provide applicants one response indicating approval or denial of the plat application; and

(B) establishes a *consolidated* and consistent set of regulations related to plats and subdivisions of land as authorized by Chapter 212, Sections 232.001-232.005, Subchapters B and C, Chapter 232, and other statutes applicable to municipalities and counties that will be enforced in the extraterritorial jurisdiction.

      (e) In an unincorporated area outside the extraterritorial jurisdiction of a municipality, the municipality may not regulate subdivisions or approve the filing of plats, except as provided by The Interlocal Cooperation Act, Chapter 791, Government Code.

      (f) This subsection applies until an agreement is reached under Subsection (d). For an area in a municipality's extraterritorial jurisdiction, . . . , a plat may not be filed with the county clerk without the approval of both the municipality and the county. If a municipal regulation and a county regulation relating to plats and subdivisions of land conflict, the more stringent regulation prevails. . . .

      (g) Subsection (f) applies to a county and area to which Subsections (b)-(e) do not apply.

TEX. LOC. GOV'T CODE ANN. § 242.001 (Vernon Supp. 2002) (emphasis added).

      Before we reach your question concerning the meaning of the term "consolidated" in section 242.001(d)(4)(B), we must consider whether the two versions of subsection (c) can be harmonized or whether one prevails over the other. Subsection (d) was part of the legislation that adopted the second version of subsection (c), which we are referring to as "House Bill 1445." *See* Act of May 24, 2001, 77th Leg., R.S., ch. 1028, § 1, 2001 Tex. Gen. Laws 2276, 2277-78. Moreover, the version of subsection (c) adopted in House Bill 1445 and subsection (d) refer to each other, and subsection (d) makes little sense without House Bill 1445's version of subsection (c). Thus, our resolution of this preliminary issue may affect whether subsection (d) has any meaning at all.

      House Bill 1445's version of subsection (c) may be harmonized with the first version, which was adopted by legislation we refer to as "Senate Bill 873." *See* Act of May 17, 2001, 77th Leg., R.S., ch. 736, § 2, 2001 Tex. Gen. Laws 1459, 1461. The Seventy-seventh Legislature adopted both of these chapters, within days of each other: Senate Bill 873 was adopted on May 17, 2001, and House Bill 1445 was adopted on May 24, 2001. In general, "if amendments to the same statute are enacted at the same session of the legislature, one amendment without reference to another, the amendments shall be harmonized, if possible, so that effect may be given to each. If the amendments are irreconcilable, the latest in date of enactment prevails." TEX. GOV'T CODE ANN. § 311.025(b) (Vernon 1998). House Bill 1445's subsection (c) governs the relationship between a municipality and a county "after an agreement under Subsection (d) is executed." Senate Bill 873's subsection (c), on the other hand, governs the relationship between a municipality and a county in the absence of an agreement under subsection (d). Thus, for those municipalities and counties that enter an agreement under subsection (d), we must consider the issue you raise concerning subsection (d)(4).

      You suggest that subsection (d)(4)(B)'s language, which permits a county and a municipality to "establish[] a consolidated and consistent set of regulations," may "be interpreted in two different

ways." TEX. LOC. GOV'T CODE ANN. § 242.001(d)(4)(B) (Vernon Supp. 2002); Request Letter, *supra* note 1, at 1. You believe that it may be construed, on the one hand, to "authorize an interlocal contract [to adopt] a hybrid combination of county and city authority." *Id.* On the other hand, you continue, it may be construed to mean "that neither city [n]or county statutory authority can be revised, depending upon which subdivision regulation is adopted; it must be either the city's statutory authority, without change, or it must be the county's statutory authority, without change." *Id.* Two briefs we have received, each arguing for a different resolution of this issue, further explain the confusion. The first, prepared on behalf of the Texas Association of Builders, contends that a municipality cannot exercise authority granted to a county, and vice versa:

> When applying the principles of the Interlocal Cooperation Act, one must construe [subsection (4)] to simply provide a single entity to perform the existing powers of municipalities and counties. [Thus, subsection (4)] allows the establishment of a single entity to perform those powers granted and held by cities and counties in a manner consistent with [subsections (1) through (3)]. [In this way,] one set of regulations applies to each subdivision plat, and a single office will administer subdivision submittal and approval.[3]

By contrast, the Texas Municipal League and the Texas Conference of Urban Counties assert in a joint brief that "cities and counties may agree to a consolidated set of regulations that apply a combination of city and county authorities":

> TML and CUC assert that for cities and counties that select [subsection (4)], the legislature intended to allow them to administer a set of rules that combined, or consolidated, the authority of both cities and counties, and could not have intended that the cities and counties could [] agree to utilize the authority of [only] one, to the exclusion of the other. To decide otherwise renders § 242.001(d)(4) meaningless, as it would simply be a restatement of § 242.001(d)(1) and § 242.001(d)(2) . . . .[4]

---

[3]Builders' Brief, *supra* note 2; *see also* Letter from Andrew C. Erben, Director of Government Relations, KB Home, to Susan Gusky, Chair, Opinion Committee, Attorney General's Office, at 3 (Mar. 11, 2002) (on file with Opinion Committee); Letter from Andrew Martin, Law Office of Andrew Martin, to Susan D. Gusky, Chair, Opinion Committee, Attorney General's Office, at 5-6 (Mar. 4, 2002) (on file with Opinion Committee); Letter from Tom Nuckols, Assistant Travis County Attorney, to Susan Denmon Gusky, Chair, Opinion Committee, Attorney General's Office, at 3-5 (Feb. 22, 2002) (on file with Opinion Committee).

[4]Letter from Monte Akers, Director of Legal Services, Texas Municipal League, and John B. Dahill, General Counsel, Texas Conference of Urban Counties, to Susan D. Gusky, Chair, Opinion Committee, Attorney General's Office, at 3 (Feb. 22, 2002) (on file with Opinion Committee) [hereinafter TML/CUC Brief]; *see also* Letter from James M. Nias, Jackson Walker, L.L.P., to Susan Denmon Gusky, Chair, Opinion Committee, Attorney General's Office, at 1 (Feb. 19, 2002) (on file with Opinion Committee).

Subsections (c) and (d) of section 242.001 of the Local Government Code, as adopted by House Bill 1445, provide a municipality and a county with means to reconcile their overlapping authority over the municipality's extraterritorial jurisdiction. Subsection (c) restricts a county's and a municipality's authority to exercise concurrent jurisdiction over platting and subdivisions within the municipality's extraterritorial jurisdiction and permits the county and the municipality to enter a written agreement that identifies the governmental body that has jurisdiction "to regulate subdivision plats and [to] approve related permits." TEX. LOC. GOV'T CODE ANN. § 242.001(c) (Vernon Supp. 2002). Subsection (d) then provides four options as to how the municipality and county may allocate jurisdiction in the written agreement executed under subsection (c). Option (d)(1) authorizes the municipality and county to agree that the municipality has exclusive jurisdiction under chapter 212, subchapter A of the Local Government Code. See id. § 242.001(d)(1). Option (d)(2) authorizes the municipality and county to agree that the county has exclusive jurisdiction under sections 232.001-.005, or chapter 232, subchapter B or C of the Local Government Code. See id. § 242.001(d)(2). Option (d)(3) authorizes the municipality and the county to agree to divide the area within the extraterritorial jurisdiction so that the municipality regulates a geographic portion of the area and the county regulates the other geographic portion. See id. § 242.001(d)(3). Finally, option (d)(4) authorizes the municipality and county to agree to "a consolidated and consistent set of regulations . . . as authorized by Chapter 212, Sections 232.001-232.005, Subchapters B and C, Chapter 232." Id. § 242.001(d)(4)(B).

Construed in accordance with the typical definitions of the terms "consolidated" and "consistent," subsection (d)(4) permits a municipality and a county to agree to one set of regulations that combines the municipal and county regulations and that eliminates any conflicts between the two—a "hybrid" set of regulations, to adopt your phrase. Neither the term "consolidated" nor the term "consistent" is defined in section 242.001. We accordingly apply the terms' "common usage." See TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 1998) ("Words . . . shall be read in context and construed according to . . . common usage."). In this context, the term "consolidated" means "combine[d] . . . into one mass, body, or connected whole." III OXFORD ENGLISH DICTIONARY 777 (2d ed. 1989) (sense 3); accord BLACK'S LAW DICTIONARY 303 (7th ed. 1999). The term "consistent" means "[a]greeing or according in substance or form; congruous, compatible." III OXFORD ENGLISH DICTIONARY 773 (2d ed. 1989) (sense 6). Our plain-language construction effectuates all four options allowed a municipality and county under subsection (d), whereas the construction you propose would duplicate subsection (d)(1) or (d)(2). See TEX. LOC. GOV'T CODE ANN. § 242.001(d)(1), (2) (Vernon Supp. 2002).

Briefs we have received suggest that our construction of section 242.001(d)(4) must be considered in light of chapter 791 of the Government Code, the Interlocal Cooperation Act. See TEX. GOV'T CODE ANN. ch. 791 (Vernon 1994 & Supp. 2002); Builders' Brief, supra note 2, at 4-5; TML/CUC Brief, supra note 3, at 5-6. We disagree. The Interlocal Cooperation Act permits a local government to contract with another local government to perform "governmental functions and services" that "each party to the contract is authorized to perform individually." TEX. GOV'T CODE ANN. § 791.011(a), (c) (Vernon Supp. 2002). The Interlocal Cooperation Act is one of several statutes that permit different local governmental bodies to contract with each other. See 35

DAVID B. BROOKS, TEXAS PRACTICE: COUNTY & SPECIAL DISTRICT LAW § 5.14 (1989 & Supp. 2001). Section 242.001(d)(4) of the Local Government Code provides contracting authority independent of the Interlocal Cooperation Act and provides counties and municipalities with additional contracting authority. Furthermore, section 242.001(d)(4) provides independent authority for a municipality and a county to enforce consolidated and consistent regulations within the municipality's extraterritorial jurisdiction.

## S U M M A R Y

Section 242.001(c) of the Local Government Code, as adopted by Act of May 24, 2001, 77th Leg., R.S., ch. 1028, § 1, 2001 Tex. Gen. Laws 2276, 2277 (House Bill 1445), can be harmonized with section 242.001(c), as adopted by Act of May 17, 2001, 77th Leg., R.S., ch. 736, § 2, 2001 Tex. Gen. Laws 1459, 1461 (Senate Bill 873), so that the subsection (c) adopted by Senate Bill 873 applies before a municipality and a county enter an agreement under subsection (d), while the subsection (c) adopted by House Bill 1445 applies "after an agreement under Subsection (d) is executed." TEX. LOC. GOV'T CODE ANN. § 242.001(c), *as amended by* Act of May 24, 2001, 77th Leg., R.S., ch. 1028, § 1, 2001 Tex. Gen. Laws 2276, 2277. Under section 242.001(d)(4)(B), a municipality and a county may enter a contract adopting a unified "set of regulations related to plats and subdivisions of land" within the municipality's extraterritorial jurisdiction that combines the municipal and county regulations and that eliminates any conflicts between the two. *See* TEX. LOC. GOV'T CODE ANN. § 242.001(d)(4)(B) (Vernon Supp. 2002).

Very truly yours,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN DENMON GUSKY
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General, Opinion Committee